UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ETHAN ALLEN GLOBAL, INC.

    Plaintiff,

v.

PEOPLES AMERICANA, INC.,
JJ PEOPLES, VAN DEWALD, and
HERSCHEL D. PRUITT

    Defendants.

---

Case No. 07 CIV 7389 (JES)

AUGUST 20, 2007

**AFFIDAVIT OF JACK DeKORNE IN SUPPORT OF PLAINTIFF'S APPLICATION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

I, JACK DeKORNE, being duly sworn, depose and say as follows:

1. I am over the age of 18 years, understand the meaning and obligations of an oath, and am competent to testify in the matters set forth in this affidavit.

2. I make this affidavit based on my own personal knowledge and upon information given to me by others that I believe to be true and correct.

3. I am the Vice President of Retailer Relations for Ethan Allen Global, Inc. ("Ethan Allen"). In that capacity, I have primary contact with authorized Ethan Allen retailers worldwide.

4. Mr. Van DeWald, through either or both of his companies, Peoples Americana, Inc. and/or JJ Peoples, was an authorized Ethan Allen retailer from approximately 1968 to July 27, 2007. The store that Mr. DeWald operated was most recently located at 192 Lexington Avenue, New York, NY 10016.

5. In March of 2007, Mr. DeWald contacted me and notified me that he intended to cease doing business as an authorized Ethan Allen retailer. He also stated that he would liquidate his remaining Ethan Allen inventory.

6. I sent Mr. DeWald a letter dated April 5, 2007, to set forth the procedure for closing the business and selling any remaining merchandise. A copy of that letter is attached to the Verified Complaint as Exhibit A. The letter describes Ethan Allen's standard procedure whenever an authorized Ethan Allen retailer chooses to end its business.

7. The letter gave Mr. DeWald until July 27, 2007 to close his doors and complete any liquidation sales, and also stated, in pertinent part:

> a) "As of Friday, July 27, we require that all building signage and awnings using the Ethan Allen name, trademark, or service mark at the Lexington Avenue location be removed from the property, and any areas of the building showing an outline of the Ethan Allen name, trademark, or service mark following the removal of such signage be eradicated, painted over or otherwise obliterated." Compl., Ex. A at 3.
>
> b) "You are hereby reminded that the Peoples license to operate as an authorized Ethan Allen retailer will be terminated as of the close of business on Friday, July 27, and that any Ethan Allen branded product remaining in Peoples possession as of that date may not be disposed of or sold without receiving prior written approval and permission from Ethan Allen. . . . As I am sure you understand this prior written approval from Ethan Allen is necessary to protect the Ethan Allen brand image." *Id.*

8. Among other things, the letter also contains guidelines for Mr. DeWald's advertising of any liquidation or store closing sale:

   a) "[A]s a national brand with a network of Design Centers, protection of the integrity of the Ethan Allen brand is of utmost importance. You will be responsible to ensure that there is no confusion in the minds of consumers as to who is going out of business . . ." *See* Compl., Ex. A at 2.

   b) "To protect the integrity of the Ethan Allen brand, drafts of all letters, newspapers, advertising, signage, radio and television scripts, or any liquidation sale materials using the Ethan Allen brand name must be submitted to our Advertising Department . . . for review at least 72 hours in advance of any publication or advertising deadline." *Id.*

   c) "If any non-Ethan Allen product is offered for sale after Tuesday, June 12, that product must be clearly distinguished from all remaining Ethan Allen brand product by means of tagging, signage, and a separate physical location. . . . Throughout the liquidation sale, every effort must be made to protect the Ethan Allen brand from any appearance of being an 'off-price' brand." *Id.*

   d) "We also require that all advertising be confined to your local market so that the Ethan Allen brand image is not affected and there is no confusion in adjacent markets." *Id.*

9. At the time Mr. DeWald announced his intention to close his business, there were several other Ethan Allen retail design centers in New York City and the surrounding areas.

10. Mr. DeWald did not comply with the terms of the April 5, 2007 letter. From April through July 2007, he continually refused to submit advertising for pre-approval, and

published misleading advertisements in the *New York Times* stating, among other things, that "Ethan Allen is Selling Out!" Mr. DeWald also had non-Ethan Allen merchandise in his store that was intermingled with Ethan Allen product in a manner that would be confusing to customers. The non-Ethan Allen products were of inferior quality and were not mentioned in Mr. DeWald's store closing advertisements.

11. I sent Mr. DeWald another letter dated May 25, 2007, advising him that his advertising was confusing, misleading and had not been pre-approved by Ethan Allen as required. A copy of that letter is attached to this Affidavit as Exhibit A. The letter also states a concern that Peoples has "brought in a significant amount of non-Ethan Allen product; which is not clearly identified in this advertisement. . . . Protecting the Ethan Allen brand and a customer's experience is extremely important and Peoples' actions cause us great concern." *See* Ex. A.

12. Mr. DeWald continued to refuse to comply with the terms of the April 5th letter. Instead, he responded to my letters with increasingly hostile communications. For example, in a May 25th letter to me, Mr. DeWald threatened legal action against Ethan Allen, and also stated his intention to publish an "open letter" to customers that contained several disparaging statements about Ethan Allen. A copy of that letter is attached to this Affidavit as Exhibit B. Mr. DeWald also continued to advertise his liquidation sales without Ethan Allen's prior approval.

13. I conducted a site visit of Mr. DeWald's store on June 18, 2007, and observed that approximately 40-60% of the merchandise was not Ethan Allen product. Many of these items were intermingled with Ethan Allen product in a confusing manner, and they were largely of

inferior quality. Mr. DeWald continued to operate and advertise under the Ethan Allen name exclusively.

14. Accordingly, I sent Mr. DeWald another letter dated June 20, 2007, to address these continuing issues. A copy of that letter is attached to this Affidavit as Exhibit C. I again advised Mr. DeWald that his advertisements were unacceptable, writing that they "are all materially misleading in at least two respects: (1) They create the false impression that the Ethan Allen company, and/or a store owned by Ethan Allen, is going out of business; (2) Each advertisement also falsely represents that all of the merchandise being sold is Ethan Allen merchandise." See Ex. C at 1. I told Mr. DeWald that his "deceptive advertisements are causing serious damage to Ethan Allen's reputation and good will, and violating its rights under federal and state law." Id. at 2. I also wrote that Ethan Allen was "very concerned about the exterior signage on the building which conveys to consumers that the product sold inside is Ethan Allen, when in fact it is possible that the majority of the product currently being sold is not Ethan Allen." See id.

15. Mr. DeWald did not close his doors and finish his liquidation sale by July 27. On July 29, I visited the location to observe the status of exterior signage and learn what I could about the remaining merchandise. The store was closed when I visited; however, I was able to look inside. The first floor had quite a bit of Ethan Allen product remaining; however, many pieces had SOLD tags on them. I also noted that the exterior Ethan Allen flags, signage and awnings had not been taken down as required. I documented this with photographs, copies of which are attached to this Affidavit as Exhibit D.

16. I spoke with Mr. DeWald on the telephone on Tuesday, July 31, and he indicated at that time that he was not willing to discuss the exterior signage of his store or any Ethan Allen

oversight with respect to the disposal of his remaining Ethan Allen product. Based on that conversation, I learned that Mr. DeWald was closing his doors that day (July 31) and releasing his staff.

17. On Monday, August 6, I again visited the location to verify the status of the exterior signage and also to determine, if possible, how the remaining Ethan Allen merchandise was going to be liquidated. I noticed that the exterior signage was the same as it was during my last visit; the Ethan Allen signage, flags and awnings remained on the building's exterior. *See* Ex. D. The store was closed and a handwritten "CLOSED – THANK YOU" sign was taped to the inside of the glass. Greg Masone, the general manager of Mr. DeWald's store, was inside and opened the door for me. I spoke with Mr. Masone for approximately 40 minutes and toured the store to review the remaining merchandise at that time. There was very little Ethan Allen merchandise remaining in the store, and Mr. Masone told me that there was nothing else in the warehouse. Based on my observations and Mr. Masone's statements, it appeared that Mr. DeWald was able to dispose of almost all of his inventory during his going-out-of-business sale.

18. On August 17, 2007, I saw an advertisement in the national section of the *New York Times* that stated in relevant part:

> FURNITURE & RUG AUCTION. Ethan Allen of New York City has CLOSED ITS DOORS. POV Auction Firm has obtained the remaining inventory and must liquidate it at public auction in conjunction with furniture and oriental rugs obtained from various liquidators and suppliers. THIS IS YOUR CHANCE TO PURCHASE FINE FURNITURE AND AREA RUGS FOR A FRACTION OF THEIR VALUE. LIVING ROOMS, UPHOLSTERY, LEATHER, CURIOS, BEDDING, GRANDFATHER CLOCKS AND MUCH MORE! FINE ORIENTAL RUGS FROM ALL OVER THE WORLD INCLUDING GENUINE HANDMADE PERSIAN RUGS. THIS AUCTION IS LIKE NONE OTHER!

19. A copy of this advertisement is attached to the Verified Complaint as Exhibit B. The advertisement also provides that the auction is to be held at the former location of ETHAN ALLEN (in large type). *See* Compl., Ex. B. The small print at the bottom of the advertisement states: "Auction conducted by Herschel Pruitt." *Id.*

20. Upon information and belief, the national section of the *New York Times* is not limited to the Manhattan area. The wide distribution of this advertisement violated the requirement in my April 5, 2007 letter that "all advertising be confined to your local market so that the Ethan Allen brand image is not affected and there is no confusion in adjacent markets." *See* Compl., Ex. A. A similar advertisement ran in the *New York Times* on Saturday, August 18, and, upon information and belief, that advertisement was also widely available in the areas surrounding New York City.

21. On Saturday, August 18, 2007, I attended the advertised auction. The exterior signage and awnings continued to display the Ethan Allen trademark and brand name. The flag on the 32nd Street side of the building still identified the store as an Ethan Allen location. The flag on the Lexington Avenue side of the building had been removed. There were four people outside the store standing on the street corners with sandwich boards advertising a "public auction" at the "former location of Ethan Allen." The words "Ethan Allen" were in large type and were very prominent on these signs. The front window of the store had a similar sign advertising the auction, with large type identifying it as "Ethan Allen." No other furniture manufacturers or distributors were mentioned in these advertisements, and the signs gave the clear impression that only Ethan Allen product was being auctioned. I took a photograph of the sandwich board advertisements; a copy of that photo is attached to this Affidavit as Exhibit E.

22. At least 50% of the merchandise inside the store was not Ethan Allen product, and it was all of inferior quality, as compared to Ethan Allen's products.

23. I stayed at the auction for approximately 40 minutes and witnessed 6-7 items being auctioned. At the beginning of the auction, the auctioneer, Mr. Herschel Pruitt, did mention that the auction was not sanctioned by Ethan Allen, and stated that he would do his best to identify both Ethan Allen and non-Ethan Allen product. People were still trickling into the auction during these remarks, however, and only approximately 20 of the estimated 35 customers attending the auction were in the room during Mr. Pruitt's disclaimer. During the time that I was in attendance, Mr. Pruitt did not repeat his disclaimer or identify any specific items as being non-Ethan Allen product.

24. Based on the exterior signage on the building and the auctioneer's failure to identify the source of the products being auctioned, it is likely that customers were confused about the auction's affiliation with Ethan Allen and/or the source of the products that were being offered for sale.

25. The unauthorized use of the Ethan Allen trademarks and brand name during the course of this auction has and will continue to cause great harm to Ethan Allen's brand image and reputation.

26. The inferior quality of the non-Ethan Allen products being auctioned under the Ethan Allen brand name also has and will continue to cause great harm to Ethan Allen's brand image and reputation.

_____
Jack DeKorne

subscribed and sworn to me this
19th day of August, 2007, before me

_____
Notary Public
Name:
My Commission Expires:

**My Commission Expires July 31, 2011**